*Amg*
JMB/JLW - USAO#2024R00126

FILED _____ ENTERED
LOGGED _____ RECEIVED

MAY - 8 2026

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

UNITED STATES OF AMERICA

v.

SIMEON BAKARE,
  a/k/a "SEMIU BAKARE,"

Defendant.

:
:
:
:
:
:
:
:
:
:
:
:

CRIMINAL NO. TDC 26cr 165

**(Wire Fraud, 18 U.S.C. § 1343;
Forfeiture, 18 U.S.C. §§ 981(a)(1)(C),
982(a)(2); 21 U.S.C. § 853(p); 28 U.S.C.
§ 2461(c))**

\*\*\*\*\*\*

**INFORMATION**

**COUNT ONE**
**(Wire Fraud)**

The United States Attorney for the District of Maryland charges that:

**Introduction**

At times relevant to this Information:

1.    Defendant **SIMEON BAKARE** ("**BAKARE**") was a resident of Waldorf, Maryland.

2.    From in or about June 2022 to in or about March 2024, **BAKARE** was an information technology auditor, who worked in the Office of Inspector General ("OIG") for the U.S. Agency for International Development ("USAID").

3.    From in or about 2018 to in or about May 2021, **BAKARE** served as a civil servant auditor with the Defense Contract Audit Agency.

4.    From in or about June 2021 to in or about June 2022, **BAKARE** also served as a U.S. Department of Defense contractor.

1

5. **BAKARE** maintained a personal account at Bank of America, N.A. ("BOA"), a federally insured financial institution as defined by 18 U.S.C. § 20, with an account number ending in 8253 ("BOA 8253"). **BAKARE** was the sole signatory on BOA 8253.

6. **BAKARE** owned and controlled The Redeemed Christian Church of God Tree of Life ("RCCG").

7. **BAKARE** maintained a business account at Maryland State Employee Credit Union ("SECU"), a federally insured financial institution as defined by 18 U.S.C. § 20, with an account number ending in 1046 ("SECU 1046"). SECU 1046 was registered to RCCG.

8. Person A was a family member of **BAKARE**.

9. Person A maintained a personal account at Maryland State Employee Credit Union ("SECU"), a federally insured financial institution as defined by 18 U.S.C. § 20, with an account number ending in 0326 ("SECU 0326"). Person A was the sole signatory on SECU 0326.

10. The United States Small Business Administration ("SBA") was a federal government agency.

11. Cross River Bank was a federally insured financial institution, as defined by 18 U.S.C. § 20, headquartered in Fort Lee, New Jersey. Cross River Bank was a United States Small Business Administration ("SBA") Preferred Small Business Lender and participated as a lender in the Paycheck Protection Program ("PPP").

12. Capital Plus Financial, LLC ("Capital Plus Financial") was a financial institution headquartered in Bedford, Texas. Capital Plus Financial was a SBA Preferred Small Business Lender and participated as a lender in the PPP.

13. Benworth Capital Partners PR LLC ("Benworth Capital") was a financial institution headquartered in Coral Gables, Florida. Benworth Capital was an SBA Preferred Small Business Lender and participated as a lender in the PPP.

## The Paycheck Protection Program

14.    The PPP was a COVID-19 pandemic relief program administered by the SBA that provided forgivable loans to small businesses for job retention and certain other expenses. The PPP permitted participating third-party lenders to approve and disburse SBA-guaranteed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

15.    To obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. A business applying for a PPP loan was required to provide documentation showing its payroll expenses and substantiating that the borrowing business was in operation before or on February 15, 2020, such as filed federal income tax documents.

16.    PPP loan applications were electronically submitted or caused to be submitted by the borrower and received through SBA servers located outside of the District of Maryland. Once approved, the business received the PPP loan proceeds via an electronic funds transfer from a third-party lender to a financial account under the control of the business.

17.    The proceeds of a PPP loan could be used for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments. The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, automobiles, personal residences, clothing, jewelry, to pay the borrower's personal federal

income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

### The COVID-19 Economic Disaster Injury Loan Program

18.     In response to the COVID-19 outbreak, the government expanded an existing disaster-related program—the Economic Injury Disaster Loan ("EIDL")—to provide loan assistance (including $10,000 advances) for small businesses and other eligible entities for loans up to $2 million.  The EIDL proceeds could be used to pay fixed debts, payroll, accounts payable, and other bills.  The loan proceeds were not intended to replace lost sale or profits, or for the expansion of a business.

19.     EIDL funds were issued directly from the United States Treasury.  Applicants applied for EIDL funds directly through the SBA via an online portal and application.  The EIDL application process, which also used certain outside contractors for system support, collected information concerning the business and the business owner, including information as to the gross revenues for the 12 months prior to the disaster (January 31, 2020), the cost of goods sold, and information as to any criminal history of the business owner.  Specifically, loans were calculated based on 6 months of gross revenues minus cost of goods sold.  Applicants could also receive a grant known as an EIDL advance up to $10,000 calculated as a $1,000 grant per employee up to a maximum of $10,000.  Applicants electronically certified that the information provided was true and accurate and were warned that any false statement or misrepresentation to the SBA, or any misapplication of the loan proceeds may result in sanctions, including criminal penalties.

20.     EIDL applications were received in and processed using computer servers located in the states of Iowa, Virginia, and Washington.  EIDL disbursement payments were initiated by the SBA using computer servers located in the state of Colorado, which transmitted the payment information to the Treasury using computer servers located in the state of Virginia.

4

## THE SCHEME TO DEFRAUD

21.    Beginning in or about April 2020 and continuing through in or about November 2021, in the District of Maryland and elsewhere, the defendant,

**SIMEON BAKARE,**
**a/k/a "SEMIU BAKARE,"**

did knowingly and willfully devise and intend to devise a scheme and artifice to defraud the SBA and PPP lenders, including Cross River Bank, Capital Plus Financial, and Benworth Capital, to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme to defraud, did knowingly and willfully transmit and cause to be transmitted by means of wire communications, in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

## THE OBJECT OF THE SCHEME TO DEFRAUD

22.    It was the object of the scheme to defraud for **BAKARE to** unjustly enrich himself by unlawfully obtaining PPP and EIDL benefits though materially false and fraudulent pretenses, representations, and promises.

## MANNER AND MEANS OF THE SCHEME TO DEFRAUD

It was part of the scheme to defraud that:

23.    **BAKARE** created and caused to be created materially false, fraudulent, and fabricated documents to submit in support of his materially fraudulent PPP and EIDL applications.

24.    **BAKARE** submitted and caused the submission of at least five false loan applications for PPP and EIDL benefits with fraudulent IRS Schedule C Forms and false attestations regarding the existence of sole proprietorships.

25.    **BAKARE** had no revenue or income from the businesses claimed on the PPP and EIDL applications that he caused to be submitted.

5

26.    **BAKARE** submitted and caused to be submitted, by interstate wire communications, materially false, fraudulent, and fabricated documents to the PPP and EIDL lenders and the SBA to obtain benefits for himself, for Person A, and for RCCG.

27.    **BAKARE** caused the issuance of PPP and EIDL benefits, which were deposited into bank accounts that **BAKARE** designated, including BOA 8253, SECU 1046, and SECU 0326, thereby resulting in interstate wire communications that ended in Maryland.

28.    It was further part of the scheme to defraud that **BAKARE** obtained more than $176,000 through materially false and fraudulent pretenses, representations, and promises.

29.    **BAKARE** unjustly enriched himself by unlawfully obtaining PPP and EIDL benefits though materially false and fraudulent pretenses, representations, and promises.

## THE CHARGE

30.    On or about July 21, 2020, in the District of Maryland and elsewhere, the defendant,

### SIMEON BAKARE,

for the purpose of executing and attempting to execute the scheme and artifice to defraud described above, did knowingly transmit and cause to be transmitted in interstate commerce by means of a wire communication, certain signals, signs and sounds, to wit, **BAKARE** caused the transmission of $84,900 in EIDL funds to be deposited in SECU 0326, which resulted in an interstate wire from a location outside of Maryland to Maryland.

18 U.S.C. § 1343

## FORFEITURE ALLEGATION

The U.S. Attorney for the District of Maryland further finds that:

1.       Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(2), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), as a result of the defendant's conviction under of the offense in Count One of this Information.

### Wire Fraud Forfeiture

2.       Upon conviction of any of the alleged offenses set forth in Count One of this Information, the defendant,

**SIMEON BAKARE,**
**a/k/a "SEMIU BAKARE,"**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(2), any property, real or personal, which constitutes or is derived from proceeds traceable to such offenses or any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of such offenses.

### Property Subject to Forfeiture

4.       The property to be forfeited includes, but is not limited to, a money judgment in the total amount of proceeds the defendant obtained as the result of the scheme to defraud and/or the property involved in the money laundering.

### Substitute Assets

5.       If any of the property described above, as a result of any act or omission of the defendants:

a.       cannot be located upon the exercise of due diligence;

b.       has been transferred or sold to, or deposited with, a third party;

c.       has been placed beyond the jurisdiction of the court;

7

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided

without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C.

§ 853(p), as incorporated by 18 U.S.C. § 982(b) and 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C)
18 U.S.C. §§ 982(a)(2) and (b)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)
Fed. R. Crim. P. 32.2(a)

Kelly O. Hayes/JMB
_____
Kelly O. Hayes
United States Attorney

8